DECISION
Plaintiffs appeal Defendant's Notice of Deficiency Assessment, issued September 14, 2010, denying Plaintiffs' dependent exemptions claimed for the 2009 tax year.
A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on September 14, 2011. Plaintiffs were represented by Gary DeFrang and Bernard Chamberland. Plaintiff Russell Nah-Dzul (Russell) appeared and testified with the assistance of a Spanish language interpreter provided by the court. Plaintiff Francisca Dominguez (Francisca) also appeared, but did not testify. Defendant was represented by Faith Derickson (Derickson), an auditor with the Department of Revenue.
Plaintiffs' exhibits, marked 1-30, were received without objection.
 I. STATEMENT OF FACTS
Plaintiffs filed a timely 2009 Oregon income tax return claiming nine dependents, which included Russell's parents who reside in Mexico. Defendant adjusted Plaintiffs' 2009 tax return, disallowing seven of the nine dependents claimed on the return. Plaintiffs' Exemption Credit was thereby reduced by Defendant from $1,584 to $352 (Def s Ans at 1.) Prior to trial, Defendant agreed to grant four previously denied exemption credits for Plaintiffs' children after Plaintiffs provided substantiating evidence. Additionally, Plaintiffs agreed that they did not provide over one-half of Francisca's mother's support to be entitled to claim her as a dependent on their 2009 tax return. The *Page 2 
only issue left at the time of trial was whether exemption credits should be allowed for the two claimed dependents in Mexico, Russell's mother and father.
At trial, Plaintiffs presented testimony from several witnesses to corroborate that Plaintiffs had provided over half of Russell's parents' support in 2009. Testimony was given by Russell, his mother, Jacinta May Dzul (Jacinta), his father, Marcos Nah Couoh (Marcos), his sister, Mayra Nah-Dzul (Mayra), and by a surgeon who performed an operation on Jacinta in 2009.
Marcos testified that he hasn't been able to work to earn any kind of income since he got sick 12 years ago. Jacinta testified that she has always been a homemaker and does not earn an outside source of income. Russell testified that his mother and father receive little to no income other than the money he gives them and that he has been sending money to them ever since his father got sick. Russell testified that his parents do not have any savings; a public or private pension; or medical insurance.
Russell earned approximately $50,000 in 2009. Russell testified that he sent funds to his parents electronically through the bank, in addition to taking money with him to give to them when he visited his parents in Mexico. Plaintiffs provided documentation that Russell had made several wire transfers in 2009 to his mother (Ptf s Ex 12, 15-16.) Two other exhibits (10 and 11) show additional transfers, one of which shows $1,820 (US) sent to Mexico. (Ptfs' Ex 10.) Russell testified that he submitted documentation in Spanish showing that he sent three different transfers of funds to his mother in 2009 to cover medical care costs, totaling $4,400.00. (Ptf s Ex 18 at 23.) Jacinta testified that neither she, nor her husband, have a bank account, so Russell sends money through the bank designating either herself or Mayra as the recipient.
To pay for Jacinta's 2009 medical bills, Russell testified that he gave money to Mayra so that she could make the physical payments to the surgeon and hospital. Russell testified that he gave this money to Mayra through bank transfers and in cash when he visited three days prior to Jacinta's surgery. Mayra stated that she did not use any of her own money to pay for her mother's medical *Page 3 
bills. In testimony, Russell estimated that the total cost of the surgery, including medications, transportation, and hospital and surgeon's fees was around 74,000 pesos.
The surgeon who performed Jacinta's stomach surgery testified that he is a gastrointestinal specialist located in Merida, Mexico. He testified that Jacinta's family paid his fee of 35,500 pesos to perform the surgery and although he was unsure exactly who provided these funds, he did recall hearing that a son in the United States would help pay for the surgery's cost.
Mayra testified that Jacinta and Marcos live with her rent free at her home in Akil, Yucatan, Mexico. Russell testified that he believed a fair monthly rental value for Mayra's home would be around 400-500 pesos. He described the characteristics of the home as being small and made of wood and palm trees. Mayra testified that the total cost of her parents' food, clothing, and any needed medications are covered by the money Russell provides. Mayra explained that meals in her home are shared and that she does not prepare separate meals for her parents. Additionally, Mayra testified that she does not use any of the money Russell sends for his parents' expenses to help pay for utilities or home maintenance costs. Plaintiffs also provided a letter, signed by the Secretary for the Municipality of Akil, stating that Jacinta and Marcos "depend economically" on Russell. (Ptf s Ex 1 at 2; Ptf s Ex 26 at 2 (English translation).) There was testimony from at least one witness that Akil is a very small town where Russell grew up and everyone knows each other and their financial affairs. The point of that testimony was to show that the Secretary for the municipality was in a position to know that Jacinta and Marcos were supported by their son Russell.
Derickson testified that Defendant does not dispute that Plaintiffs provided some financial support to Russell's parents in 2009. Defendant accepts that $1,012.00 was wired to Jacinta and Marcos in 2009. (Ptf s Ex 12.) Derickson testified that there are four requirements that must be satisfied in order for a relative to qualify for a dependant exemption credit. The claimed dependents: 1) cannot be the qualifying children of any other taxpayer; and they must meet 2) the relationship test, 3) the support test, and 4) the gross income test. Derickson testified that the third and fourth *Page 4 
tests were not met because Plaintiffs failed to provide adequate substantiation as to the amount of support provided or the household gross income of the family in Mexico.
Specifically, Derickson testified that the support test was not met because although Plaintiffs presented evidence that they provided some portion of Jacinta and Marcos' support in 2009, they failed to show the total amount of support needed for the year. Derickson stated that the gross income test had not been met because Plaintiffs had not provided documentation verifying the fair market value of Mayra's home, which Marcos and Jacinta lived in rent free, or documentation to substantiate that neither of them received a pension or additional support from other family members. Derickson concluded that it was difficult to determine who exactly paid for Jacinta's surgery and that it was unclear on some of Plaintiffs' money wire receipts who sent and received the money transfers.
 II. ANALYSIS
The issue before the court is whether Plaintiffs are entitled to claim as dependents for the 2009 tax year two relatives living in Mexico. Taxpayers are allowed a "personal exemption credit against taxes otherwise due" for each individual claimed as a dependent. ORS 316.085(1)(a)[1].
A. Personal Exemption Credits
It was the Oregon legislature's intention "to make personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." Ellison v. Dept. of Rev., TC-MD No 041142D, WL 2414746 *6 (Sept 23, 2005) (citing ORS 316.007). Along these lines, Oregon allows the same number of personal dependency exemptions "as allowed under section 151 of the [IRC]." ORS 316.085(1)(a). Under IRC section 151(c), an exemption credit is generally allowed for each "dependent" of a taxpayer. IRC section 152(a) defines a dependant as either "(1) a qualifying *Page 5 
child, or (2) a qualifying relative." "Father" and "mother" are listed under IRC section 152(d)(2)(C) as qualifying relatives for purposes of personal exemption credits.
Additionally, the IRC imposes residency requirements for claiming dependents for personal exemption credits. Under IRC section 152(b)(3)(A), "[t]he term `dependent' does not include an individual who is not a citizen or national of the United States unless such individual is a resident of the United States or a country contiguous to the United States." Therefore, "to qualify as a dependent an individual must be a citizen or resident of the United States or be a resident of the Canal Zone, the Republic of Panama, Canada, or Mexico * * *." 26 CFR § 1.152-2(a)(1).
The parties do not dispute that the two claimed dependents are Russell's mother and father. Furthermore, Plaintiffs provided both testimony and documentary evidence to show that Russell's parents are residents of Mexico (Ptf s Ex 2 at 1.) Defendant disagrees, however, that Plaintiffs have provided the threshold amount of support to Russell's mother and father in order to claim them as dependants on their 2009 tax return. To properly claim a qualifying child or relative as a dependent, the taxpayer is required to provide over one-half of the dependent's support for the tax year. See IRC § 152(d)(1)(C).
Defendant agrees that Plaintiffs submitted adequate documentation to show that $1,012.00 was provided in wired funds to the claimed dependents. Documentation was also submitted in Spanish which Russell testified shows three separate transfers of funds to his mother totaling $4,400.00 to cover surgery fees. In addition to the wired funds, Russell testified that he took additional money with him to pay for the remaining cost of his mother's surgery when he visited her in Mexico a few days prior to her operation.
Sworn testimony from five witnesses buttressed Plaintiffs' assertion that the two claimed dependents living in Mexico received substantial financial support from Plaintiffs in 2009. The surgeon who performed Jacinta's costly surgery testified that he had heard that a son in the United States would help with the operation's costs. Russell and his mother, father, and sister *Page 6 
testified that the claimed dependents do not work or have any savings and that their expenses for food, clothing, and any needed medications are covered by the money provided by Plaintiffs. Mayra admitted that she does not charge her parents' for rent, utilities, or house maintenance expenses. However, Russell described his sister's home as a small dwelling made of wood and palm trees and testified that he believed the fair market rental value of the property would be minimal, perhaps $500 per year in US currency. Photographs of the home in Mexico submitted at trial (no objection from Defendant) demonstrate that the home is a very modest structure, small in size (perhaps 400 square feet), and of poor quality materials.
Defendant maintains that despite the breadth of sworn testimony provided, Plaintiffs did not provide the necessary documentation to show they provided over one-half of the claimed dependants' total support for the year. Defendant used the support and gross income tests to conclude that in order for a taxpayer to claim a qualifying relative as a dependent, the total amount of support used by the dependent for the year must be clearly quantified and substantiated through documentation. Thus, the question in this case becomes whether Plaintiffs have sustained their claim and satisfied their statutory burden of proof through sworn testimony and some documentation to prove that they provided over one-half of the claimed dependents' support for the 2009 tax year.
B. Burden of Proof
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427 (2009). Plaintiffs are seeking affirmative relief and therefore have the burden of proof. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence."Schaefer v. Dept. of Revenue, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing Feves v. Dept. of Revenue,4 OTR 302 (1971)). Therefore, Plaintiffs have the burden of proving that, by the greater *Page 7 
weight of the evidence, they provided over one-half of the claimed dependents' total support for the year.
Plaintiffs' evidence included documentation showing wire transfers totaling $1,012.00, as well as documentation in Spanish which Russell testified showed money transfers in the amount of $4,400.00 to help pay for his mother's surgery. Plaintiffs also presented testimony from five witnesses lending support to their assertion that the claimed dependents' only support for 2009 was supplied by the Plaintiffs, except for the free housing provided by Mayra.
Defendant has adopted the view that because Plaintiffs have failed to provide independent written documentation, which corroborates the total amount of income received for the year, supplemental testimony is insufficient to prove that Plaintiffs supplied over one-half of the claimed dependants' support. While this narrow approach may be appropriate at an administrative level, allowing the Department of Revenue to efficiently process claimed dependents on income tax returns, it is not an appropriate approach for the court to use in weighing all of the evidence presented. The court determines the credibility of the witnesses and the weight to be given to the sworn testimony in order to arrive at its decision. "Were it otherwise, there would be no point in a trial — the court could simply make a decision based on the written documentation." Carter v. Dept. of Rev., TC-MD 080689C, WL 1351818 at *3 (April 30, 2009).
The sworn testimony presented by each of the five witnesses testifying on Plaintiffs' behalf was credible and did not conflict in any manner. Russell admitted that he did not know exactly how much money he contributed in 2009 to his parents' support but he also stated that he had covered all of the fees from his mother's expensive surgery, as well as the entire cost of his parent's food, clothing, and medications for the year. Several of the witnesses testified that the only other source of income the claimed dependents received was the free housing provided by Mayra. The evidence suggests, and the court is persuaded, that in 2009, the total household expenses for the family in Mexico, including food and lodging, were at most $1,000 and that Plaintiffs sent, at the very least, *Page 8 
several thousand dollars to Russell's mother and father that year. Thus, the requirement of over one-half of the support is established to the satisfaction of the court.
Defendant did not present any evidence to implicate that the claimed dependents received additional sources of income, such as through a pension, medical insurance, or support from other family members. Weighing all of the evidence presented, the court finds that Plaintiffs have met their burden to show that they provided over one-half of the claimed dependents' support.
 III. CONCLUSION
The court concludes that Plaintiffs have established by a preponderance of the evidence that they are entitled to claim as dependents the two family members (Russell's mother and father) living in Mexico because they provided over one-half of the support of those individuals in 2009. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted and Defendant's adjustment disallowing personal exemption credits for the two qualifying relatives residing in Mexico is reversed.
Dated this ___ day of December 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinsonon December 1, 2011. The Court filed and entered this documenton December 1, 2011.
[1] Unless noted otherwise, all references to the Oregon Revised Statute (ORS) are to 2007.